## 20566

Jack J. MORRIS and Ruth J. Morris, Respondents, v. Donald C. PETERSON and D. C. Peterson Company, Inc., of which Donald C. Peterson is, Appellant.

(239 S. E. (2d) 727)

694

*James M. Herring of Corish, Smith, Remler and Moore, Hilton Head Island, for Appellant,*

*Jack D. Simrill* of Hilton Head Island, *for Respondents,*

December 13, 1977.

LITTLEJOHN, Justice:

This action was commenced by Jack J. Morris and Ruth J. Morris (the Morrises) against Donald C. Peterson

(Peterson) to recover damages allegedly suffered as a result of Peterson's default under a note and a real estate mortgage. The case was tried without a jury and resulted in a judgment in favor of the Morrises in the amount of $5,018.36. Peterson appeals.

The facts out of which this action arose are not greatly, if at all, in dispute and may be briefly summarized. The Morrises sold a condominium apartment, located on Hilton Head Island, to Peterson. The property was deeded subject to a first mortgage to the First Federal Savings and Loan Association of Walterboro (the bank) in the amount of $28,-500.00, the payment of which Peterson expressly assumed. As additional consideration for the conveyance, Peterson gave the Morrises a promissory note in the amount of $14,-000.00, which was secured by a second mortgage on the property.

Peterson later defaulted on both mortgages, and foreclosure proceedings were begun by the Bank against both the Morrises and Peterson. The Morrises were named in the foreclosure action in order that their second mortgage on the property could be eliminated from its lien position. The Bank expressly waived a deficiency judgment against either the Morrises or Peterson.

Negotiations with the Bank ensued, and the Bank agreed to dismiss the foreclosure action if Peterson would bring the mortgage payments current, pay delinquent regime dues and the Bank's legal fees, and convey the property to the Morrises, who were to be responsible for future first mortgage payments. Thereafter, the Morrises found someone who would buy the property and assume the first mortgage if the foreclosure could be straightened out and payments brought current. The Morrises then agreed with Peterson to cancel the second mortgage and the note it secured (on which there remained due the amount of $9,000.00) in return for a reconveyance of the property to them. A deed was executed accordingly. After satisfying the Bank by paying arrearage,

legal fees, property taxes and regime dues, the Morrises sold the property at a price of $33,500.00 and realized a net profit of $454.48. The Morrises now claim that the expenses they incurred in reacquiring and selling the property, which total $5,018.36, were obligations of Peterson, and that Peterson has been unjustly enriched by their actions.

Peterson maintains that since the Bank waived a deficiency judgment against both him and the Morrises, they were under no legal or moral compulsion to incur the claimed expenses, since they acted as volunteers.

The lower court heard the evidence and ruled in favor of the Morrises, holding that Peterson was obligated to reimburse the Morrises for the expenses they incurred in straightening out the foreclosure and selling the property, based on Peterson's express assumption of the mortgage and on the equitable principle of unjust enrichment. We reverse.

The Morrises place principal reliance on the case of *Jones v. Bates,* 241 S. C. 189, 127 S. E. (2d) 618 (1962). *Jones* is clearly distinguishable from the case at bar and can be of no help to the Morrises. Involved there was an action for breach of the mortgage assumption contract, brought by the original mortgagor against an assuming grantee. The action was brought to recover for payments which the original mortgagor was required to make to the guarantor of the loan as a result of the default by a suubsequent grantee under the mortgage. Unlike *Jones, supra,* the present action is in the nature of assumpsit, based on the principle of unjust enrichment.

Peterson, having assumed payment of the note and mortgage in the amount of $28,500.00 to the Bank, became contractually obligated to pay the debt. As between the Morrises and Peterson, it was certainly the primary obligation of Peterson to pay. When the Bank, in its foreclosure action, waived a deficiency judgment against either Peterson or the Morrises, the assumption-of-the-mortgage-debt contract was effectually obliterated. The debt was due to the Bank and

the Bank waived its right to require Peterson or the Morrises to pay the same and was content to seek recovery out of the sale of the property. At that point the foreclosure action could have proceeded and neither would have had any personal obligation. Instead, the Morrises elected to reacquire the property, make past due payments, pay attorneys' fees, etc., and sell it for $33,500.00. The wisdom of canceling their second mortgage and note, on which some $9,000.00 was due, in lieu of pursuing a judgment thereon, is not satisfactorily explained in the record, but their election to do so was their right.

Peterson has not been unjustly enriched. The Bank effectually relieved him of any responsibility to pay the debt personally. It was not within the province of Peterson to reinstate the obligation, or any part thereof, under the facts of this case.

Admittedly, the result which we now reach might be different if deficiency judgments had been sought in the foreclosure action.

It is unquestioned that instead of taking the action which they took, the Morrises could have allowed the foreclosure to go through and then obtained judgment against Peterson on the $9,000.00 note. Having chosen to reacquire the property, settle the foreclosure action and reconvey the property, being under no obligation or compulsion to do so, the Morrises will not be heard to complain of the expenses which they voluntarily incurred.

Our resolution of this question renders consideration of the remaining questions unnecessary.

Reversed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.